## A. N. WALTERS v. JACOB ROCK.

Opinion filed February 21, 1908.

**Bills of Notes — Fraud — Burden of Proof.**

1. Where fraud in the inception of a promissory note is alleged and established, the burden falls upon the indorsee to show that he is a purchaser in good faith for value and before maturity.

**Same.**

2. A promise made by the payee of a note in reference to the consideration for giving the same that he does not intend to fulfill constitutes a fraud that will defeat the note except in the hands of an innocent holder.

**Same — Bona Fide Purchaser — Necessity for Inquiry.**

3. If a purchaser of a note for value before maturity has notice of facts tending to show defenses to the same, he cannot purposely refrain from making inquiries as to the inception of the paper, and at the same time claim to be a bona fide purchaser.

**Same.**

4. Payment of value on a purchase of negotiable paper before maturity constitutes prima facie a bona fide purchase but no more.

**Same.**

5. Circumstances may rebut such prima facie presumption, and good faith in the purchase may be wanting, although the purchase was made before maturity and for value.

**Same — Evidence — Absence of Good Faith.**

6. The fact that the purchaser does not expressly state that he purchased in good faith is not necessarily fatal to a showing of good faith, but the omission to so state is a fact which may be considered in connection with other facts to show the absence of good faith in the purchase.

**Same — Question for Jury — Verdict Sustained.**

7. Whether the purchase was made in good faith is ordinarily a question for the jury, and it is *held* in this case that the verdict was sustained by evidence bearing on the question of bad faith.

**Same.**

8. If a purchaser of negotiable paper has knowledge of defenses before he pays for it, he is not a bona fide purchaser, although the note may have been indorsed and delivered to him before such knowledge.

### Practice — Motion to Suppress Deposition.

9. A written motion to suppress a deposition as a whole is too late when filed with the clerk after the trial court has ordered a jury called, although the clerk has not drawn or called the name of a juror.

### Same — Time to Object to Deposition — When Trial is Commenced.

10. The statute requires such motions or objections to be made before the commencement of the trial, and as the requirement is intended to facilitate the despatch of business, and to give an opportunity for retaking the deposition if suppressed, a construction of the statute that the trial has commenced when a jury is called is reasonable, and gives effect to such intention.

### Names — Initials — Identity of Witness.

11. The fact that the notice to take depositions gave the initials of the Christian names only, and the name was given in the deposition and subscribed by the witness by his Christian name, the first letters of which were the same as the initials given in the notice, does not make extrinsic proof necessary to show that the witness testifying is the same as the one described in the notice, especially where the officer taking the deposition indorses the same name on the envelope in which the deposition is inclosed as the one given in the notice.

### Evidence — Expert Testimony.

12. An expert witness may give an opinion based in part on what was stated to him by the patient.

### Same.

13. An expert may give an opinion based on the testimony of other witnesses that he has heard, or that has been read to him, in case there is no conflict in the facts testified to by such other witnesses.

### Pleading — Objections — Construction.

14. More liberality is allowed in favor of the allegations of a pleading where objected to for the first time at the trial than when attacked by demurrer.

Appeal from District Court, Traill county; *Pollock, J.*

Action by A. N. Walters against Jacob Rock. Judgment for defendant, and plaintiff appeals.

Affirmed.

*Styles & Koffel* for appellant.

Exceptions to a deposition filed before commencement of trial are in time. State v. Kent, 5 N. D. 516, 67 N. W. 1052; State v. Hasledahl, 2 N. D. 521, 52 N. W. 315; Hunnell v. State, 86 Ind. 431; Wagner v. State, 42 Ohio St. 537; Cregier v. Bunton, 2 Strobh, 503; Ueland v. Dealy, 11 N. D. 530.

Evidence is necessary to identify D. E. Rogers with Daniel Eastman Rogers. Vickery v. Burton, 6 N. D. 245. 69 N. W. 193; Andrews v. Winn, 54 N. W. 1047; Morris v. McKnight, 1 N. D. 266, 47 N. W. 375; Bem v. Bem, 55 N. W. 1102; Buckoven v. Lincoln Township, 83 N. W. 335.

When plaintiff shows purchase in good faith, for value, and no knowledge of circumstances surrounding the inception he is entitled to a directed verdict. 14 Enc. Pl. & Pr. 641-681; Mumford v. Weaver, 31 Atl. 1; Second Nat. Bank v. Morgan, 30 Atl. 957; Newbolt v. Pennock, 26 Atl. 607.

The circumstances surrounding the transaction determine plaintiff's good faith. Williams v. Huntington, 13 Atl. 339; 4 Enc. Law (2nd Ed.) 323; Knowlton v. Schultz, 6 N. D. 417, 71 N. W. 550; Farrell v. Lovett, 68 Me, 326; Kellog v. Curtis, 69 Me. 213; Bank v. Sargent, 27 Atl. 193; Cheney v. Janssen, 29 N. W. 289; Crampton v. Perkins, 3 Atl. 301; Martin v. Johnston, 52 N. W. 819; Rosemond v. Graham, 56 N. W. 38; Williams v. Huntington, 13 Atl. Rep. 339; Sec. 6358 Rev. Codes N. D. 1905; 4 Enc. Law (2nd Ed.) 300; Richards v. Monroe, 52 N. W. 339; Davis v. Seeley, 38 N. W. 901; Natl. Bank v. Young, 7 Atl. 490; Clarion Bank v. Morgan, 30 Atl. 958; Credit Co. v. Howe Co. 8 Atl. 476; Bank v. Pennington, 77 N. W. 1084; Cook v. Wierman, 2 N. W. 338; Bank v. McNeir, 53 N. W. 178; Tied Com. Paper, Sec. 289; 2 Rand. Com. Paper, Sec. 998, 1001; 1 Daniel, Neg. Inst. 767, 773; Tourtelot v. Reed, 64 N. W. 928.

Though the taker of negotiable paper be negligent, unless he acted in bad faith, his title will prevail. Crawford's Annotated Neg. Inst. Law (2nd Ed.) 54; Cheever v. Pittsburg Co. 44 N. E. 701; Amer. Ex. Nat. Bank v. New York Belting Co. 43 N. E. 168; Knox v. Eden Musee Am. Co. 42 N. E. 988; Canajoharie Nat. Bank v. Diefendorf, 25 N. E. 403; Vosburgh v. Diefendorf, 23 N. E. 811; Jarvis v. Manhattan Beach Co. 43 N. E. 68; Murray v. Lardner, 2 Wall. 110; Swift v. Smith 102, U. S. 442, 26 L. Ed. 193; Belmont v. Hoge, 35 N. Y. 65; Welsh v. Sage, 47 N. Y. 143; Nat. Bank v. Young, 41 N. J. Eq. 531; Fifth Ward Bank v. First Nat. Bank, 48

N. J. Law, 513; Credit Co. v. Howe Machine Co. 54 Conn. 357; Ladd v. Franklin, 37 Conn. 64; Croft's Appeal, 42 Conn. 154.

The facts not being in evidence, expert's opinion is inadmissible. Kinney v. Brotherhood, 15 N. D. 21, 106 N. W. 44; 17 Cyc. 242.

He cannot predicate upon hearsay. Heald v. Thing, 45 Me. 392; Barber's Appeal, 22 L. R. A. 90; Wright v. Wright, 50 Pac. 444; Baltimore Safe Deposit Co. v. Berry, 49 Atl. 401; Bradford v. Cunard Steamship Co., 16 N. E. 719; Lane v. Bryant, 69 Am. Dec. 282; Lund v. Tyngsborough, 9 Cush. 36; Tibbits v. Phipps, 57 N. E. 1126; Foster v. New York Fidelity Co. 75 N. W. 69, 40 L. R. A. 833; Wright v. Tatham, 5 Cl. & F. 670, 2 Jur. 461; Rupe v. State, 61 S. W. 929; 17 Cyc. 242; Jones v. Portland, 50 N. W. 731, 16 L. R. A. 437; 17 Cyc. 243.

*John Carmody,* for respondent.

When fraud is shown in the inception of a negotiable instrument, indorsee must show his purchase in good faith, for value, without notice. Vickery v. Burton, 6 N. D. 249, 69 N. W. 193; Knowlton v. Schultz, 6 N. D. 417, 71 N. W. 550; Dunn v. National Bank, 77 N. W. 111; Kirby v. Berguian, 90 N. W. 856; Tamlyn v. Peterson, 15 N. D. 488, 107 N. W. 1081.

Evidence was sufficient to sustain the verdict. (See cases last above cited.)

Medical expert testimony may rest in part on patient's statements to him. Jones v. Chicago, St. P. M. & O. R. Co., 45 N. W. 444; Hand v. Brookline, 126 Mass, 324; Armendy v. Stillman, 3 S. W. 678; Ft. Worth v. Thompson, 76 Tex. 501; Wright v. Hardy, 22 Wis. 348; State v. Klinger, 46 Mo. 224; Matteson v. N. Y. Cent. Co. 35 N. Y. 487; Gilman v. Stratford, 50 Vt. 723.

MORGAN, C. J. Action on a promissory note by an indorsee claiming to be a purchaser in due course. The answer alleges that the note was procured through fraudulent representations on the part of the payee, and that the plaintiff took said note with knowledge of the fraud by which it was executed and delivered. The jury found in favor of the defendant. A motion for a new trial was made and denied. Plaintiff appeals from the order denying a new trial. The assignments are numerous; but the one principally relied on is that the evidence is insufficient to justify the verdict.

The original payee of the note was one Dr. Rea, of Minneapolis, who traveled as a specialist in curing various diseases. The de-

fendant consulted him at Moorhead, Minn., and was informed that he was afflicted with a cancer, and the doctor agreed to cure him for $250. The defendant had only $25 in money, but gave his note for $250, and paid him $25 in cash, which was immediately indorsed as a payment on the note. The doctor then treated him by injecting some preparation into the alleged cancerous growth, and agreed to send him some more medicine by express. In a very few days the medicine came by express, but the defendant refused to accept it for the reason that it had been consigned C. O. D., and required a payment of $101.50 before the express company could deliver it to him. The defendant then consulted a local physician, who cured him in about one week. These are the facts as related by the defendant, and must have been found to be true by the jury in view of the verdict in his favor. Accepting the same as true, we think that the allegation of fraud in the inception of the note was sustained. The promise as made to the defendant must have been made without any intention of performing it. Under our statute the making of such a promise constitutes fraud. Section 5293, Rev. Codes 1905 ; Tamlyn v. Peterson, 15 N. D. 488, 107 N. W. 1081.

The evidence also amply sustains the fact that the doctor was not acting in good faith in his representations. He did not send the medicines in accordance with his agreement, but sent them by express with intent to force a payment of $100 not due before the medicines could be used. He sold the note very soon after the refusal to pay the $100 to the plaintiff. Whether the plaintiff is an indorsee in due course is a question in dispute between the parties. The plaintiff claims that the note duly indorsed was delivered to him on June 6th, and that he thereafter paid $202.50 therefor, having purchased on a 10 per cent. discount. He does not claim to have paid for it on that day, and first says that he does not know the day when he paid for it. He states that he paid for it later, when he made a "settlement" with the doctor for some other notes. The evidence shows that the plaintiff was accustomed to buy notes from the doctor regularly, and had been accustomed to do so for three years, and that he had some trouble in collecting some of them because the parties "did not want to pay them." He does not specifically remember the reasons why the makers refused to pay the notes, but knows that he has a considerable number of

these notes now on hand, past due and uncollected. He made no inquiry concerning the financial responsibility of the defendant before purchasing the note, unless from the doctor. The defendant was a stranger to him. He immediately placed the note in the hands of an agency for collection, although it was not yet due. He knew that the doctor was accustomed to travel throughout the country in his professional capacity, and took notes in payment of services performed. He says further: "I did not know of any dispute or defense of the note at the time I purchased it. I did not inquire." He nowhere states that he bought the note in good faith. He does not state that he had no notice of defenses at the time he paid for the note. It will be noted that it was bought and delivered to him on June 6th. He claims that he paid for it later when a "settlement" was made for this note and others. On this question he testifies: "Q. At the time that you bought this note in suit from Dr. Rea, did you buy any others from him? A. I don't remember. Q. But at the time you settled with him for this note you settled for several others at the same time, did you? A. Very likely so. Q. Do you remember when you paid for the note? A. I do not." On redirect examination, in response to leading questions, he says that he is positive that the "settlement" was made prior to July 15th, which would be about three weeks before the note became due. Dr. Rea was also a witness, and on the question of the negotiation of the note testified simply that the "note was sold before maturity on June 6th." Nothing was stated by him about the time of payment nor how paid. On this testimony we are urged to declare that the verdict is not sustained by the evidence, and that it is uncontradicted that the plaintiff was an innocent purchaser. After carefully reading all of the testimony of the plaintiff, we find it evasive, contradictory, and of an unsatisfactory character to prove facts entirely within the knowledge of himself and Dr. Rea. There is not even an attempt to show that there was no notice of defenses on the day that he claims to have paid for the note. If he then had notice of defenses to the note, he would not be an innocent purchaser. Joyce on Defenses to Commercial Paper, § 240.

The plaintiff's contention, therefore, is that he is a bona fide holder by virtue of purchase and payment before day of maturity. Payment of value on a purchase before maturity is prima facie evidence that the purchase is in due course. Bank v. Flath, 10 N.

D. 281, 86 N. W. 864. We think that the record shows facts sufficient to sustain the verdict that plaintiff did not purchase in good faith. Conceding that payment was made before maturity, we are convinced that the jury had sufficient facts before them to warrant the inference therefrom that plaintiff did not buy the note in good faith as contemplated by the statute and the law merchant. A purchase in due course means a purchase before maturity for value without notice and in good faith. Plaintiff had handled Dr. Rea's notes before as an employe of a collection firm, and had purchased a large number of his notes before. Many of these notes were still uncollected and past due. As to some of these notes payment had been refused. He immediately placed the notes in other hands for collection after their purchase. He had no knowledge, and is not certain whether he made any inquiry, as to the financial responsibility of the maker. He and Dr. Rea were well acquainted and intimate in business relations. Litigation had grown out of some of these purchases of notes from Dr. Rea. In Knowlton v. Schultz, 6 N. D. 417, 71 N. W. 550, Judge Corliss said: "It may be true in this case that the plaintiff bought before maturity for value, and without notice of any defense; and yet he may not be a purchaser in good faith. He may, when he bought, have had knowledge of facts which excited in his mind such suspicions as to the paper that he feared to make an investigation lest it would disclose a defense, and therefore he carefully shut his eyes and bought in the dark. In such a case he would not be a purchaser in good faith"— citing cases. "In this case the plaintiff is careful not to state that he bought in good faith, nor does he offer any explanation of the circumstances surrounding the purchase. * * * The plaintiff, having the burden of proof, has failed to sustain it by positive evidence. The inference of his good faith to be drawn from the other facts sworn to by him is by no means strong, and the case discloses several circumstances which cast grave doubt upon the fact of his good faith in the transaction." In the case at bar we find the same circumstances practically as in that case and others that tend to show bad faith in not making inquiry concerning the title to the note in question. The evidence of want of notice of defective title at the time the money is claimed to have been paid is very unsatisfactory.

Plaintiff had notice through the answer that fraud in the inception of the note was claimed, and there is no reason why positive

proof should not have been produced as to the time of payment. We do not wish to intimate that good faith may not be shown in some cases by inferences from shown facts. But failure to state that the purchase was in good faith is a strong circumstance in this case to negative good faith. The plaintiff also had positive knowledge of the fact that payment was refused on many of Dr. Rea's notes. It savors of a purpose to avoid inquiry amounting in law to bad faith. The rule is stated by Joyce on Defenses to Commercial Paper as follows in section 475: "But if the acts of the holder of the paper in obtaining the paper constitute bad faith, he will not be entitled to protection as a bona fide holder. It may, therefore, be stated as a rule that suspicious circumstances alone, even though sufficient to put an ordinarily prudent person on inquiry, will not, in the absence of bad faith or a willful disregard of the facts showing an infirmity of the paper, destroy the title of a taker of negotiable paper as that of a bona fide holder." See, also, Bank v. Flath, 10 N. D. 281, 86 N. W. 864; Sinkler v. Siljan, 136 Cal. 356, 68 Pac. 1024; Mass. Nat. Bank v. Snow, 187 Mass. 159, 72 N. E. 959; Robbins v. Swinbourne Print Co., 91 Minn. 491, 98 N. W. 331, 867; Second Nat. Bank v. Morgan, 165 Pa. 199, 30 Atl. 957, 44 Am. St. Rep. 652; Smith v. Livingston, 111 Mass 342; Goetting v. Day (Sup.) 87 N. Y. Supp. 510; Kirby v. Berguin, 15 S. D. 444, 90 N. W. 856; Tamlyn v. Peterson, 15 N. D. 488, 107 N. W. 1081. The circumstances shown by the record, taken altogether, are sufficient to overcome the prima facie presumption of good faith raised by proof of purchase for value before maturity if it was paid before maturity. It is well settled in this state that, when it is shown that there was a fraud in the inception of a note, the burden rests upon the purchaser to establish that he purchased the same in due course and in good faith. Tamlyn v. Peterson, 15 N. D. 488, 107 N. W. 1081; Vickery v. Burton 6 N. D. 245, 69 N. W. 193; Knowlton v. Schultz, 6 N. D. 417, 71 N. W. 550; Bank v. Flath, 10 N. D. 281, 86 N. W. 867.

The deposition of Dr. D. E. Rogers was read at the trial. Objection was made thereto on the ground that the notice to take the deposition gave the name of the witness as D. E. Rogers. The deposition was subscribed by "Daniel Eastman Rogers," and he was not referred to in the deposition or certificate as "D. E. Rogers." The officer who took the deposition indorsed on the envelope that the same contained the deposition of Dr. D. E. Rogers, and gave the

title of the action in which it was to be used. Where the notice gives the name of the witness by initials, and a witness appears at the time and place designated, and gives material testimony in the action, we do not think that the fact that he subscribes the same by his full Christian names, the first letters thereof being the same as the initials given in the notice that extrinsic evidence is required to show that the witness testifying is the same person as the witness named in the notice. The indorsement on the envelope, however, would be sufficient to identify the party if additional identification were necessary.

Objection was made at the trial to the giving of any evidence on the part of the defendant, for the alleged reason that the answer did not state facts sufficient to constitute a defense. The point is that the facts constituting the fraud and fraudulent representations are not sufficiently alleged. We think the allegations are sufficiently full and specific, as against an objection made at the trial. Much more liberality is permitted in construing allegations of complaints or answers when made at the trial by objection than when attacked on demurrer. Waldner v. State Bank of Bowden, 13 N. D. 604, 102 N. W. 169. Plaintiff filed objections to the deposition of Dr. Rogers, and asked to have it suppressed. The written objections were handed to the clerk after the court had directed him to call a jury, but before the name of any juror was called. The court refused to hear the objections on the express ground that the objections had not been filed "before the commencement of the trial." The statute requires objections to depositions on grounds other than those relating to irrelevancy or incompetency to be filed before the commencement of the trial (section 7288, Rev. Codes 1905), "and the court shall on motion of either party hear and decide questions on exceptions to depositions before the commencement of the trial" (section 7289, Rev. Codes 1905). The time when a trial commences may be at a different stage as to one question than as to another question. No general rule can be laid down that will govern as to all questions. As to some questions, courts have held that the trial does not commence until the jury is impaneled and sworn. Hunnell v. State, 86 Ind. 431. We think the construction given this statute by the trial court a reasonable one. The object of providing for filing such objections before the trial commences is to enable the party to secure another deposition if the one on file is suppressed. It also serves to expedite court proceedings.

No harm can follow a strict enforcement of the rule announced by the trial court, and it is certainly proper to dispose of such preliminary questions before any time is taken up in securing a jury. This rule has the sanction of authority. Weeks on Depositions, §§ 365-378; Hill v. Smith, 6 Tex. Civ. App. 312, 25 S. W. 1079; Ueland v. Dealy, 11 N. D. 530, 89 N. W. 325.

Objections were also made to certain evidence contained in Dr. Rogers' deposition. He was qualified to give expert testimony, shown by the fact that he was a graduate of the Harvard Medical School and had practiced medicine since 1900. He treated the defendant for the trouble with which he was suffering, and it was competent for him to state from his personal examination and treatment that he saw no appearances or signs of a cancerous growth. Rogers on Ex. Ev. § 50. This question was objected to: "What, if any, symptoms of cancerous growth did you find there?" The objection is based upon the fact that the witness did not describe or state all the matters that he saw when he examined the defendant about two years after a cure had been effected, and that his conclusions were therefore inadmissible as too remote and the evidence not showing all the facts on which the opinion was based. We think sufficient facts were shown in his testimony upon which an opinion was properly given. The objection as to the remoteness in time of the examination went to the weight of the evidence, and not to its competency. This question was also objected to when asked of the same witness: "You read the testimony of Dr. Rea, and you heard the testimony of Dr. Rogers read, you heard the testimony of Mr. Rock in regard to the condition of his lip. Now, from the testimony of Dr. Rea, Dr. Rogers and Mr. Rock, state whether or not in your opinion Mr. Rock was suffering from a cancerous growth on his upper lip at the time he was treated by Dr. Rea in May. 1904." The objection to this question was that it called upon the witness to pass upon the credibility of the witness in case of conflict. On examination of the evidence given by these witnesses, we find no conflict as to the facts stated by them. The conclusion or opinion of Dr. Rea as to what defendant was suffering from differed from that of the other medical witnesses, but as to the facts and conditions of the ailment there was no difference. For this reason, the evidence was not objectionable, and did not call upon the witness to decide facts properly for the jury. The form of the question is not to be commended. It is the safer practice to incorporate all the facts relied on in a

hypothetical question. It then becomes easy to determine what facts the opinion is based on. One of the medical experts testified that his opinion was based partly on what the defendant had told him as to the symptoms of the ailment. This was objected to. A physician may give his opinion based on such statements in connection with an examination. In Barbour v. Merriam, 11 Allen (Mass.) 322, it was said: "The existence of many bodily sensations and ailments which go to make up the symptoms of disease or injury can be known only to the person who experiences them. It is the statement and description of these which enter into and form a part of the facts on which the opinion of an expert as to the condition of health or disease is founded." Rogers on Expert Ev. § 47; Quaife v. C. & N. W. Ry. Co., 48 Wis. 513, 4 N. W. 658, 33 Am. Rep. 821; Jones v. Chicago, St. P. M. & O. Ry., 43 Minn. 279, 45 N. W. 444.

There are other assignments of error mentioned in the brief, but they are so closely related to those already disposed of that further statement of them would be without any benefit. We have carefully considered them in detail and find them devoid of merit.

The order appealed from is affirmed. All concur.