## R. N. HILL ET AL. v. T. J. SMITH.

### No. 366.

1. **Locative Contract—Execution.**—A locative contract signed by one party only is sufficiently executed as to both parties where it appears to have been accepted and acted on by the other party.

2. **Ancient Instrument— Filing Before Trial.**—An instrument more than thirty years old need not be filed among the papers of the cause before trial, as required by the statute (article 2257) regulating the introduction in evidence of registered instruments.

3. **Trespass to Try Title — Undivided Interest.** —Proof of an undivided interest in the land will authorize a recovery of the entire tract sued for as against a stranger to the title.

4. **Certificate of Acknowledgment—Grantor Known.**—The certificate of an acknowledgment taken in 1862 need not show that the grantor was known to the officer.

5. **Depositions—Presence of Party at Taking.**—The mere fact that the plaintiff was present at the taking of certain depositions is not ground for suppressing them.

6. **Same — Motion to Suppress.** —A motion to suppress depositions because the plaintiff was present when they were taken must be made before announcement of ready for trial.

7. **Hearsay Evidence — Location of Certificate.** — Statements made to the witness by a surveyor, since deceased, as to where he had located a certificate, are hearsay; as also are statements so made by the widow of the original grantee as to her information of where it was located.

8. **Practice — Cumulative Evidence.** — Where the case is tried by the court without a jury, the admission of incompetent evidence which is merely cumulative is not ground for reversal.

9. **Land Certificate—Variance in Evidence—Identity.**—A copy of the land certificate was competent evidence, though its date varied by several days from that as recited in the patent, and it appeared to have been issued to the administrator of the original grantor instead of to his heirs. It was to be determined under all the evidence whether this was the certificate by virtue of which the land was located.

10. **Practice—Issues as to Different Defendants.**—Where the plaintiff claims against some defendants on the whole title, but against others only on a question of boundary, and the trial is before the court without a jury, there is not necessarily any error in announcing the decision as to the former controversy before proceeding to try the latter.

11. **Costs where Defendants Claim Adversely to Each Other.**— Where plaintiff recovers against claimants of the whole title, and also against contestants of his boundary, he may properly have judgment for costs against all the defendants; and if it does not appear that any items were peculiar to his boundary contest which would not have been incurred in a suit between the two classes of defendants, the boundary contestants are entitled to judgment for costs against the defeated claimants of the title.

12. **Same — Practice on Appeal.** — An objection that the judgment is against only some of the defendants for costs, and not also against a codefendant,

should be primarily made in the trial court, and presented on appeal by proper assignments.

**13. Survey—Construction of Calls.**—Where all the calls of the locating surveyor can not be strictly observed, as few should be disregarded as can be consistently done; and in this case lines should be run in both directions from the established beginning corner, following the calls as long as it can be done, and then the gap closed in the manner that seems most consistent with all the calls.

APPEAL from Haskell. Tried below before Hon. J. V. COCKRELL.

*F. P. Morgan* and *Baldwin & Lomax*, for appellants Hills and Wooley.

1. It is error for any one who is interested in any cause to be present with the officer and witnesses when the officer is taking the depositions of the witness for his benefit. Floyd v. Rice, 28 Texas, 341.

2. Hearsay evidence is always admissible to show true boundaries of any land, or where the same was originally located. Stroud v. Springfield, 28 Texas, 649; George v. Thomas, 16 Texas, 74; Welder v. Carroll, 29 Texas, 317; Hurt v. Evans, 34 Texas, 111; Hurt v. Evans, 49 Texas, 311.

3. Hearsay evidence is not admissible to prove any fact, except pedigree, boundary, etc. Smith v. Shinn, 58 Texas, 1.

4. A judgment rendered as to a portion of the parties in suit, before rendering judgment disposing of the issues as to all the parties, is not a final judgment, and is erroneous. Lynn v. Arambould, 55 Texas, 611; Martin v. Crow, 28 Texas, 614; Rev. Stats., arts. 1283, 1337.

5. The court erred in rendering judgment against these defendants for any part of the cost of the survey, because the object of the survey was to determine whether or not the pre-emptors were on any part of the Green B. Cook survey; and the court having reached the conclusion that these defendants had no interest in said survey, these defendants could not be held for the costs incurred by said pre-emptors' wrongs; and because, further, the issues in this cause between plaintiff and these defendants were first tried, and the court rendered judgment against these defendants, and after said judgment was rendered proceeded to hear the issues between the plaintiff and the other defendants, and these defendants not being parties to that proceeding are not liable for any part of the cost. Rev. Stats., art. 1420; Herndon v. Rice, 21 Texas, 455; Anderson v. McKinney, 22 Texas, 653; Mitchell v. Mitchell, 80 Texas, 101; Clark v. Adams, 80 Texas, 674.

*Ed. J. Hamner*, for appellants M. H. Dolman et al., pre-emption defendants.—1. The survey actually run is the true survey. If the lines can be found and traced in part, they are to be observed, and can not be departed from. They can not be made to yield to course and distance,

and the boundary for the residue of the distance will be direct lines from the termination to the point of intersection. Nor will the fact that the locator gets less land than the grant calls for vary the rule. Baker v. Light, 80 Texas, 633; Johnson v. Archibald, 78 Texas, 102; Adams v. Crenshaw, 74 Texas, 116; George v. Thomas, 16 Texas, 88; Blaisdell v. Bissell, 6 Burr., 259; Bolton v. Lann, 16 Texas, 113; Schaeffer v. Berry, 62 Texas, 705; Stafford v. King, 30 Texas, 272; Hubert v. Bartlett, 9 Texas, 103; Davis v. Smith, 61 Texas, 21; Jones v. Anderson, 62 Texas, 660; Boon v. Hunter, 62 Texas, 582.

2. The survey must be closed by direct lines from last footprints of surveyor (George v. Thomas, 16 Texas, 88; 2 Bibb, 261; Forbes v. Withens, 71 Texas, 303); and a decrease in quantity of land does not alter the rule. Burnett v. Burns, 39 Texas, 502.

*J. R. Fleming, Theo. Mack*, and *Cockrell & Cockrell*, for appellee.

1. The court did not err in admitting in evidence the locative contract executed by D. C. Smith, because same being an ancient instrument, it was not necessary that it should have been either recorded or acknowledged for record; and it was relevant and very pertinent as a circumstance as affecting the question of the identity of the Green B. Cook under whom plaintiff claimed, and also evidenced a contract with reference to the land in controversy. There was no objection to the instrument on account of any circumstances of suspicion on its face. It proved itself as at common law; and article 2257, Revised Statutes, has no application whatever. Sass v. Sevier, 58 Texas, 567.

2. If there was error in admitting in evidence the deed of Mrs. Milbury Rice, the error was wholly immaterial, since apart from said deed plaintiff showed title as to a part of the land; and as appellants showed no title, plaintiff was entitled to recover the whole of said land. Hutchins v. Bacon, 46 Texas, 414; Sowers v. Peters, 59 Texas, 221.

3. The court would not have been justified in excluding the copy of certificate number 201 for the sole reason that it was dated March 10, 1838, instead of March 1, 1838, there being no evidence whatever that there was ever any other than the one certificate issued to Green B. Cook, and the identification is complete, irrespective of said variance in the date, and there can be no doubt on the face of the papers that the land in controversy was located by virtue of this particular certificate.

4. If there was any error in taxing the costs, it is not subject to revision here, no motion to retax having been made in the lower court. Jones v. Ford, 60 Texas, 128; Weibusch v. Taylor, 64 Texas, 56.

5. It is as legitimate to reverse the calls of a survey as to follow in the order of the field notes; and the calls should be reversed when by so doing the survey as it exists on the ground is rendered more certain, and the calls are thus made more consistent than by observing the order of

the field notes, or when, by so reversing, effect can be given to all the calls, while otherwise many of the calls must be abandoned; and calls for lines of adjoining surveys will control calls for course and distance merely; and it will be presumed, in the absence of positive evidence, that all the calls of a survey were actually made on the ground. Woods v. Robinson, 58 Texas, 655; Davis v. Smith, 61 Texas, 18; Ayers v. Lancaster, 64 Texas, 305; Freeman v. Mahoney, 57 Texas, 621.

HEAD, Associate Justice. — The land in controversy was patented February 11, 1860, to the heirs of Green B. Cook, by virtue of headright certificate number 201, issued by the Board of Land Commissioners for Sabine County on the 1st day of March, 1838, for twenty-six labors of land, and is located in Haskell County. Appellee claims under the heirs of one Green B. Cook, who died in Sabine County in 1838; while appellants claim under a Green B. Cook who died in Robertson County about 1855 or 1856.

The survey upon which the patent was issued was made June 15, 1857, by J. T. Love, deputy surveyor, and recites that it was made by virtue of headright certificate number 201, issued by the Board of Land Commissioners for Sabine County to Green B. Cook on the 1st day of March, 1838. The evidence is sufficient to sustain the finding of the court that the Green B. Cook under whose heirs appellee claims was the one to whom the certificate was issued.

Appellants' first assignment complains at the action of the court below in overruling defendants' second application for a continuance. This application was made to enable appellants to obtain the testimony of one Mrs. Renfro and of R. H. Matthews, and recites, that on or about the 20th of September, 1891, defendants learned that said witness Renfro would testify that she lived in Sabine County, Texas, from about 1821 to about 1852; that while she lived in said county she was personally acquainted with the Green B. Cook under whom defendants claim, and that she knew of the time when he married, and that he married about 1833 or 1834 in Sabine County, Texas, and lived there with his wife up to 1840, at which time he removed to Robertson County, Texas; that during the time he lived in Sabine County the certificate by virtue of which the land in controversy was located was issued to him. This application does not, however, state from whom appellant gained this information, and in his testimony upon the trial he admits that he had not in fact gained it from any one, but only surmised that he could make this proof from the fact that he had learned that this lady lived in the neighborhood during the time named. The application does not show diligence under the statute, and we are not prepared to hold that the court erred in overruling it. It certainly did not, if the application is to be construed in connection with the testimony of the party who swore to it, given upon the trial. The evi-

dence of the witness Matthews, for whose absence the application was also made, was in substance supplied by other witnesses.

We find no reversible error in the admission of the contract between De Witt C. Smith and Rebecca Cook for the location of this certificate. Appellee claimed under both parties to this contract, and we incline to think it was admissible as an assertion of right to the land at that early date.   Hickman v. Gillum, 66 Texas, 314.   If, however, we are mistaken as to this, its erroneous admission would not require a reversal of the judgment, in the light of the other evidence introduced, the trial having been before the court without a jury.   Besides, the only objection presented by the assignment to the introduction of this instrument is, "because it is not executed by Rebecca Cook, and shows on its face that it is not a contract;" and we are clearly of opinion that this objection, which is the only one that should be considered by us, is not well taken.   It was signed by the obligor, which was sufficient, when accepted by the obligee, to make it a contract.   It was not necessary that this contract should have been filed, as required by the statute regulating the introduction in evidence of registered instruments, it being over thirty years old, and no objection interposed upon the ground that its execution had not been proven.

It is not necessary for us to decide as to whether or not the court erred in admitting the deed of May 1, 1862, from Mrs. Milbury Rice to De Witt C. Smith, and the deeds from S. H. Martin and M. C. Holmes to T. W. Ford, because, independent of these deeds, appellee showed title to an undivided interest in the land from the patentees, and this was sufficient to enable him to recover the entire survey as against strangers to this title.

It was not necessary for the certificate of acknowledgment to show that Mrs. Rebecca Cook was known to the officer at the time this one was taken (May 1, 1862).   Driscoll v. Morris, 2 Texas Civ. App., 607, and cases there cited.

We believe the court did not err in refusing to suppress the depositions of plaintiff's witnesses, upon the ground that he was present when they were testifying.   It is not made to appear that he in any manner influenced their testimony, and under these circumstances we are not prepared to hold that the depositions should have been excluded, had the motion to suppress been made in proper time.   Parker v. Chancellor, 73 Texas, 475.   This motion, however, was not made until after the parties had entered into the trial, and a number of the depositions had been read. The motion should have been made before the announcement of ready, so as to enable the parties to have had the depositions properly taken, in case they were excluded.

We find no error in the action of the court in refusing to allow appellants' witness Davlen to testify to what the deputy surveyor, Love, told

him as to where he had located the Green B. Cook certificate under which appellants claim. We see nothing in the record which takes this case out of the general rule which excludes hearsay evidence; besides, this evidence was substantially supplied by the introduction of the field notes made by Love of this survey.

We think the court erred in permitting appellee, Smith, to testify to the conversation he had with Mrs. Cook, in which she told him that the certificate issued to her husband had been located in Sabine County, Texas, and afterwards floated and relocated in Haskell County. Smith v. Shinn, 58 Texas, 1; Herndon v. Davenport, 75 Texas, 462. But we think this error is not sufficient to require a reversal of the judgment, in the light of the other evidence, the trial being before the judge without a jury. Andrews v. Key, 77 Texas, 35; Schleicher v. Markward, 61 Texas, 99. This evidence was merely cumulative.

We think there was no error in the action of the court in admitting in evidence the certified copy of certificate number 201, although it bore date on the 10th instead of the 1st day of March, 1838, and recited that it was issued to Isaac Lowe, administrator of Green B. Cook, instead of to his heirs. It was for the court to say, under all of the evidence, whether or not that was the certificate by virtue of which the land was patented. Mason v. McLaughlin, 16 Texas, 24; Pleasants v. Dunklin, 47 Texas, 357.

We think there was no error in the action of the court in announcing its decision as between appellee and defendants Hills and Wooley before proceeding with the trial as to the other defendants, especially as this seems from the record to have been done at the request, or at least acquiescence, of all the parties to the suit. The controversy between appellee and these defendants was confined entirely to the issue as to who claimed under the correct Green B. Cook, while the issue as to the other defendants was exclusively one of boundary, and no injury could have resulted from the practice adopted by the court.

We have had considerable difficulty in arriving at a satisfactory conclusion as to a proper adjustment of the costs between the respective parties. Appellee, as plaintiff, claimed the land as against all the defendants under the heirs of one Green B. Cook, and he having successfully maintained his claim, should of course recover all his costs, and as to him we have had no difficulty in concluding that the judgment of the court below is correct. The defendants R. N. and J. A. Hill, in their answer, pleaded over against plaintiff and their codefendants, claiming all the land under the heirs of another Green B. Cook. The other defendants, besides the Hills and Wooley, claim as pre-emptors adversely to both Cooks. The court gave judgment in favor of plaintiff against all of the defendants for the land and all costs, and subsequently modified this judgment by rendering judgment in favor of the pre-emption defendants

for the costs over against Hill and Hill; and we have finally concluded that it committed no error in so doing. Appellee recovered the land from all the parties, and it follows that he was also entitled to recover his costs from all of them. Appellants Hill and Hill sought to recover the land from all the parties, but failed to maintain their title as against any of them. As to them, the pre-emption defendants were successful. Had the suit been only between the Hills and the pre-emption defendants, it is clear the latter would have recovered all their costs from the former, and we see no reason why the same result should not follow in this case. The Hills no less failed to make good their affirmative claim against their co-defendants, because appellee showed a better title than any of them. It does not appear that any of the items of the costs taxed as above set forth were peculiar to appellee and the pre-emption defendants and would not have been incurred in a suit between the latter and the Hills, nor is any complaint made that Wooley was not also made primarily liable with them.

We find no error in any of the other assignments presented by the appellants who have filed briefs. The pre-emption defendants have assigned errors, but have filed no briefs supporting them in this court, and they will therefore be treated as waived.

The judgment of the court below will be affirmed.

*Affirmed.*

Delivered February 14, 1894.

### ON MOTION FOR REHEARING.

HEAD, Associate Justice.—At a former day of this term the judgment of the trial court was affirmed as to all of the appellants, after considering the assignments of error presented by the Hills and Wooley, but declining to consider those filed by the pre-emption appellants, because no brief was on file presenting them. Both classes of appellants now present separate motions for rehearing.

The motion of appellants Hills and Wooley will be overruled, for the reasons set forth in the original opinion filed herein. In that opinion attention was called to the fact that no complaint was made by the Hills upon the ground that their coappellant Wooley was not also made primarily liable with them for the costs of the lower court. This objection should not only be presented by proper assignments in this court, but should also have been called to the attention of the court below, and proper efforts there made to have the alleged error corrected. See authorities cited in Sulphur Springs & Mount Pleasant Railway Company v. St. Louis, Arkansas & Texas Railway Company, 2 Texas Civil Appeals, 657.

The pre-emption appellants present us with two motions, both filed

since the decision of this cause by us.   In these motions we are asked to consider the assignments filed by these appellants, upon the ground that briefs were in fact filed by them while this cause was pending in our Supreme Court, and that they were not advised of their loss until after the submission of the case in this court.   It does appear, however, that they were so advised something over two weeks before its decision, and that no effort was made to supply the loss, other than writing a personal letter by their attorney to the Chief Justice of this court, enclosing a copy of his brief, which was promptly answered, requesting that any motions that he might desire to make should be filed with the clerk.   As a matter of fact, the decision of the cause was postponed for the two weeks above indicated, after the receipt of this letter, to enable the proper motions to be filed and called to our attention.

Under these circumstances the motion should be refused, and would be, were it not that since the announcement of our decision the lost briefs have been found by our clerk in the papers of another cause represented by the same counsel, where they had evidently been filed by the clerk of our Supreme Court, as the costs for filing same appear to have been taxed by him therein.   Under these circumstances, in justice to these appellants, we have carefully considered all of their assignments, but have arrived at the conclusion that the judgment of the court below must nevertheless stand affirmed.

The only issue between appellee and these appellants is as to whether or not the land claimed by the latter is within the boundaries of the Green B. Cook survey, they claiming under locations subsequent to it. The field notes of the Cook survey, as contained in the patent thereto, are as follows:   " Beginning at a stake on the west bank of the Double Mountain Fork of the Brazos River, 1010 varas north 20 west from the northeast corner of survey number 2 of Buffalo Bayou, Brazos & Colorado Railway Company scrip number 107; thence down said stream with its meanders to a stake, from which Louisa Peak bears north 24 west; thence north 41 west 700 varas; thence north 20 west 180 varas to the junction of said stream with the Main or Salt Fork of the Brazos; thence up the south bank of said Main or Salt Fork with its meanders to a stake on the river bluff, from which Louisa Peak bears north 18¼ west; thence south 1229 varas, a stake; thence west 702 varas, a stake; thence south 1900 varas, a stake; thence east 1367 varas, a stake in the west boundary line of survey number 17 of Buffalo Bayou, Brazos & Colorado Railway Company scrip; thence north 702 varas with west boundary line of said number 17, to its northwest corner; thence east 1900 varas, with the north boundary line of same, to its northeast corner; thence north with the west boundary line of survey number 1,950 varas to its northwest corner; thence east 3455 varas, with the north boundary line of same, to the place of beginning."

The foregoing sketch will give an approximate idea of the location of these different surveys, as contended for by the appellants and appellee respectively. The outside lines represent the Cook survey as claimed by appellee and established by the judgment. This includes the small pre-emption surveys marked on the map. The dotted line commencing at the point on the river from which Louisa Peak bears north 18¼ west, and running thence with the calls of the patent until the north line of number 17 is reached, and from thence to the beginning, as in the other case, represents the Cook survey as claimed by appellants, and, as will be seen by reference to the sketch, will not include the land claimed by them.

It is apparent that all of the calls in this patent can not be literally observed. There is no difficulty in locating the beginning point, as called for in the patent, nor in following the meanders of the river until we reach the point from which Louisa Peak is called to be north 18¼ degrees west; and we agree with the surveyors, that the field notes of the Cook survey, as taken from the surveyor's records, show the meanders of these rivers to have been done by actual work upon the ground. If, however, we start from this point and run south 1229 varas; thence west 702 varas, a stake; thence south 1900 varas, as called for in the patent, we strike the north line of number 17 near its centre, before the full distance is reached, instead of a point 1367 varas west and 702 varas south of its northwest corner, as called for by the field notes of the Cook survey; and if we stop at this point on the north line of number 17, and proceed from thence to the beginning corner, the calls for the point 1367 varas west of number 17, and for the point 702 varas south of its northwest corner on its west boundary line, and for its northwest corner, must be entirely ignored; and the survey as thus located would fall something near 1300 acres short of the amount called for by its patent.

We believe, in ascertaining the boundaries of surveys, where all of the calls made by the surveyor can not be strictly observed, as few should be disregarded as can be consistently done; and that in this instance the proper way to locate the survey is to commence at the beginning corner and run in both directions, following the calls in the patent as long as it can be done, and then close the gap in the manner which seems to be most consistent with all the calls. By doing this, the only change that will be necessary will be to add about 150 varas to the line called to run south from the river 1229 varas, and to change the call from this point on the river for Louisa Peak from north 18¼ west to north 10¼ west, which would have the effect to add about 2300 varas to the river line. The amount of land that would thus be included in the survey, we understand, would about correspond with the amount called for in the patent. We think it quite probable that the surveyors who testified in the case were right in their conclusion, that the only work done on the ground in making the

original survey was the meandering of the river; but it is quite evident that the surveyor, in making his calculations to include the amount of land desired, estimated the distance it would be necessary for him to go west of the surveys on the south, and therefore called for their corners and lines, and the fact that he made a mistake as to the stopping point on the river should not have the effect to annul all these calls, when the result will be to create such a decided shortage in the amount of land intended to be granted by the patent. Had the surveyor gone entirely around the survey, his footsteps should be followed, notwithstanding the deficiency in quantity; but when he stops on the line and undertakes to give directions as to the route to be taken from that point to the place of starting, without himself visiting the designated places, these directions should be followed in such way as to best locate the grant according to the calls thus made. Robinson v. Doss, 53 Texas, 496.

The judgment rendered by the court below locates the survey in this way, and we find no error therein.

The motions of all of the appellants for a rehearing will therefore be refused.

*Motion overruled.*

Delivered March 28, 1894.